**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terry Lee Owens,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-20-01712-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Terry Lee Owens's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of social security disability benefits. (Doc. 19). The appeal is fully briefed (Doc. 19, Doc. 22, Doc. 23), and the Court now rules.

**I.　BACKGROUND**

The issues presented in this appeal are whether substantial evidence supports the Administrative Law Judge's ("ALJ") determination that Plaintiff was not disabled from May 1, 2016 to July 31, 2019 and whether the ALJ committed legal error in his analysis. (Doc. 19 at 1).

**a. Factual Overview**

Plaintiff was 61 years old at the time of his hearing. (Doc. 15-3 at 31). He has a high school education and past relevant work experience as a deputy sheriff and police sergeant. (*Id.*) Plaintiff filed his social security disability claim on November 14, 2016, alleging disabilities beginning on May 1, 2016, including degenerative joint disease of the bilateral

knees and right shoulder. (*Id.* at 24). An ALJ denied Plaintiff's claim on July 31, 2019. (*Id.* at 32). The SSA Appeals Council denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision. (*Id.* at 2).

### b. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show he "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if he suffers from a medically determinable physical or mental impairment that prevents him from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what

[the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform his "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform his past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—he "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### c. The ALJ's Application of the Factors

Here, at the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability. (Doc. 15-3 at 24).

At the second step, the ALJ determined that Plaintiff's degenerative joint disease of the bilateral knees and right shoulder constituted severe impairments under 20 C.F.R. § 404.1520(c). (*Id.*) The ALJ also determined that the rest of Plaintiff's alleged impairments were non-severe. (*Id.* at 24–26).

At the third step, the ALJ determined that Plaintiff's impairments did not meet the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 26). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b), "except he is able to stand and/or walk for four hours in an 8-hour workday." (*Id.*) The ALJ also found that Plaintiff "is unable to climb ladders, ropes or scaffolds," "can occasionally climb ramps and stairs, balance, stoop and crouch," "can rarely kneel or crawl," and "can occasionally reach overhead with the right upper extremity. (*Id.*)

At the fourth step, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (*Id.* at 30–31).

At the fifth step and final step, the ALJ concluded that given Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy that he can perform. (*Id.* at 31–32). Accordingly, the ALJ determined that Plaintiff was not disabled. (*Id.* at 32).

## II.     LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means … such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v, Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.    DISCUSSION

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly weigh the opinions of (1) treating physician, Gary B. Zoellner, M.D., and (2) consultative examiners Scott Krasner, M.D., and Jeri B. Hassman, M.D. (Doc. 19 at 10). The Court addresses each of Plaintiff's arguments in turn.

For claims filed before March 27, 2017, 20 C.F.R. § 404.1527 outlines how medical source opinions are to be evaluated in assessing a claimant's RFC. Medical source opinions

are considered "together with the rest of the relevant evidence" in the record based on a set of factors, including the nature and extent of the source's relationship with the claimant, supportability, consistency with the record as a whole, the source's medical specialization, and the source's familiarity with social security disability rules and regulations. 20 C.F.R. § 404.1527(b)–(c). With respect to supportability, more weight is generally accorded to source opinions with explanations that are supported by objective medical evidence in the record, including medical signs and laboratory findings. *Id.* § 404.1527(c)(3).

### a. Opinion of Treating Physician Dr. Zoellner

Plaintiff argues that the ALJ gave "little weight" to Dr. Zoellner's opinion without sufficient justification for rejecting it. (Doc. 19 at 12). Dr. Zoellner treated Plaintiff in July 2016 and again in October 2016. (Doc. 15-3 at 27). The ALJ noted that Dr. Zoellner's July 2016 treatment notes indicate that ten days after Plaintiff's knee surgery he was walking without a cane, crutches, or a knee brace with only a slight limp and Dr. Zoellner's October 2016 treatment notes indicate that Plaintiff made good progress and had full range of motion in his right knee. (*Id.* at 27).

Dr. Zoellner drafted a medical opinion statement in December 2016 concluding that Plaintiff's symptoms are "often severe enough to interfere with attention and concentration required to perform simple tasks." (*Id.* at 29). Dr. Zoellner also noted that Plaintiff is able to "lift and/or carry less up to 20 pounds occasionally [sic] and less than 10 pounds frequently," "walk one to two blocks without rest [or] significant pain," and "stand and/or walk for two hours in an 8-hour workday and sit for six hours in an 8-hour workday." (*Id.*)

The ALJ addressed Dr. Zoellner's opinion as follows:
> Dr. Zoellner's opinion is in many respects inconsistent with the record, which shows greater physical capacity by the claimant. As discussed above in detail, the record shows that the claimant's knee symptoms are controlled with treatment. The record also does not show objective findings related to the claimant's right shoulder that would support the degree of limitations found by Dr. Zoellner. Accordingly, little weight overall is given to Dr. Zoellner's opinion.

(*Id.*)

- 5 -

First, Plaintiff contends that the ALJ rejected Dr. Zoellner's opinion "based on limitations that were not even included in the opinion evidence" (Doc. 19 at 13) pointing to the ALJ's statement that "[t]he record also does not show objective findings related to the claimant's right shoulder that would support the degree of limitations found by Dr. Zoellner" (Doc. 15-3 at 29). According to Plaintiff, this is in error because Dr. Zoellner did not evaluate Plaintiff for or base his opinion on Plaintiff's right shoulder injuries. (Doc. 18 at 13).

However, 20 C.F.R. § 404.1545 requires an ALJ is to "consider all of [the claimant's] medically determinable impairments of which [the ALJ] is aware" in determining a claimant's RFC. *Id.* § 404.1545(a)(2). An ALJ must determine the claimant's RFC "based on all of the relevant medical and other evidence" in the record. *Id.* § 404.1545(a)(3). The ALJ determined, considering both Plaintiff's knee and shoulder impairments, the record "shows greater physical capacity by the claimant" than the limitations outlined in Dr. Zoellner's opinion. (Doc. 15-3 at 29). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). As such, it was not legal error for the ALJ here to discount Dr. Zoellner's opinion of Plaintiff's physical limitations in view of the record evidence documenting Plaintiff's multiple impairments.

Next, Plaintiff argues that the ALJ rejected Dr. Zoellner's opinion evidence as inconsistent with evidence in the record while inaccurately stating that the record shows that Plaintiff's "knee symptoms are controlled with treatment." (Doc. 19 at 13–14). The Court disagrees. Prior to the ALJ's conclusion that Dr. Zoellner's opinion is inconsistent with the record evidence, the ALJ's opinion sets out specific medical evidence in the record from various acceptable medical sources that the ALJ found to be both inconsistent with Dr. Zoellner's opinion and consistent with improvement of Plaintiff's symptoms. For example, the ALJ found that multiple doctors, including Dr. Zoellner, identified that Plaintiff was doing well after his knee surgery; he also had a normal musculoskeletal examination with no acute distress. (Doc. 15-3 at 27). In March 2018, Dr. Guerro noted

that Plaintiff had no complaints related to his knee. (*Id.*) Although the record indicates that a November 2018 x-ray revealed "significant bilateral [left] knee arthritis" and that Plaintiff complained of knee pain in January 2019 to Dr. Peare, after Plaintiff received injections in his knees in February 2019, Plaintiff reported relief of his symptoms. (*Id.* at 28). The Court finds that the ALJ evaluated the evidence in the record and provided specific and legitimate reasons for rejecting Dr. Zoellner's opinion as inconsistent with the record as a whole, including his own treatment notes. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted).

Finally, Plaintiff argues that the ALJ should have given Dr. Zoellner's opinion controlling weight, as a treating physician's medical opinion, over the non-examining state agency doctors' opinions. (Doc. 19 at 14). Specifically, Plaintiff argues that the ALJ accorded the opinions of Consultative Examiners Dr. Dennis Swena and Dr. Melvin Roberts "significant weight" and "generally consistent with the record" while discounting Dr. Zoellner's opinion without explanation of how the examining opinions are consistent with the record. (*Id.* at 15).

The ALJ noted that both Dr. Swena and Dr. Roberts found that Plaintiff "is able to perform work at light exertional level, except he is unable to climb ladders, ropes, or scaffolds." (Doc. 15-3 at 30). Both Dr. Swena and Dr. Roberts further found that Plaintiff "needs to avoid concentrated exposure to extreme cold, vibration and hazards." (*Id.*) The ALJ addressed Dr. Swena and Dr. Roberts's opinions as follows:

> The undersigned gives their opinions substantial weight because they are generally consistent with the record, but does not find the noted environmental limitations well substantiated by the broader record, and assesses a four hour limit for daily standing and/or walking.

(*Id.*)

The weight that a particular opinion is afforded is based on who is giving that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). "Generally, the opinion

of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Id.*; *see* 20 C.F.R. § 404.1527(c)(1)–(2). But a treating physician's opinion is not necessarily conclusive. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). If a treating physician's opinion is contradicted by another physician's opinion, an ALJ may reject it "by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Moreover, "[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

Here, the ALJ gave specific and legitimate reasons to rely on Dr. Swena's and Dr. Roberts's opinions and to discount Dr. Zoellner's opinion. As discussed above, the ALJ, noting the inconsistency between Dr. Zoellner's medical opinion and the record evidence as a whole, determined that Dr. Zoellner's opinion regarding Plaintiff's physical capacity was entitled to little weight. (Doc. 15-3 at 29). Instead, the ALJ determined that Dr. Swena's and Dr. Roberts's opinions regarding Plaintiff's physical capacity were more consistent with the objective medical evidence in the record and properly gave them more weight. (*Id.* at 30). While it is generally true that a treating physician's opinion is entitled to controlling weight, the Court does not find any legal error or lack of substantial evidence in the ALJ's decision to rely on Dr. Swena's and Dr. Robert's opinions over Dr. Zoellner's inconsistent and unsupported opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.").

### b. Opinions of Consultative Examiners Dr. Krasner and Dr. Hassman

Plaintiff argues that the ALJ erred by failing to properly weigh the opinions of Dr. Krasner and Dr. Hassman. (Doc. 19 at 10–11).

Dr. Krasner examined Plaintiff in July 2017 and concluded that Plaintiff "is able to

lift and/or carry 50 pounds occasionally and 25 pounds frequently" and "stand and/or walk for four hours in an 8-hour workday [but] [h]e is unable to climb ladders." (*Id.* at 28). The ALJ noted that Dr. Krasner's opinion states that Plaintiff was able to ambulate without a cane but used "an assistive device to help with ambulation." (*Id.*) Plaintiff disagrees with the ALJ's characterization and interprets Dr. Krasner's opinion as opining that "Plaintiff has a medical necessity to use a cane for balance and pain… [and] for all terrains." (Doc. 19 at 15). Upon review of the record, the Court finds that in addition to the statements identified by the ALJ, in response to form questions in his opinion statement, Dr. Krasner identified that Plaintiff uses a cane for balance and pain and checks "YES" to both "Is [the cane] needed for all terrains?" and "Is [the cane] medically necessary?". (Doc. 15-8 at 174).

The ALJ addressed Dr. Krasner's opinion as follows:
> The residual functional capacity found by Dr. Krasner is less restricting exertionally than the record supports, and the broader record supports no sustained need [for] a cane to assist ambulation. Accordingly, only some weight is given to Dr. Krasner's opinion.

(Doc. 15-3 at 28).

Dr. Hassman examined Plaintiff in December 2018 and concluded that Plaintiff "is able to lift and/or carry 20 pounds occasionally, and 10 pounds frequently." (*Id.* at 29). Dr. Hassman noted that Plaintiff walked with a cane in the right hand, but was able to walk without it, albeit with an "antalgic gait." (*Id.* at 28–29). Dr. Hassman's opinion also noted that Plaintiff was able to walk on his heels both with and without a cane but used the cane to help himself up after kneeling during the examination. (*Id.* at 29). Notably, the ALJ points out that Dr. Hassman's opinion does not assess a "specific or continuing need for [a] cane or other assistive device." (*Id.*)

The ALJ addressed Dr. Hassman's opinion as follows:
> Dr. Hassman's finding that the claimant is able to stand and/or walk for six hours in an 8-hour workday is less restricting than the record supports. Otherwise, the undersigned gives great weight to the remainder of Dr. Hassman's opinion because it is generally consistent with the record.

(*Id.*)

1    Under the circumstances of this case, an ALJ may reject the opinion of an examining
2 doctor by offering clear and convincing reasons supported by substantial evidence in the
3 record. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996).
4 The ALJ met this standard here, and Plaintiff's arguments to the contrary are unpersuasive.

5    Specifically, Plaintiff argues that the ALJ erred in adopting the RFC because its
6 omission of "the medical necessity for cane use" is inconsistent with Dr. Krasner's and Dr.
7 Hassman's opinions and is unsupported by substantial evidence. (Doc. 19 at 16–17).
8 However, the Defendant points out that Plaintiff himself testified that he only needed a
9 cane to walk about 60% of the time. (Doc. 22 at 8).

10    Throughout the ALJ's opinion, the ALJ cites to evidence inconsistent with Dr.
11 Krasner's opinion that Plaintiff requires a cane. For example, the ALJ found that Dr.
12 Zoellner's treatment notes from ten days after Plaintiff's knee surgery "reveal that claimant
13 was ambulating with no cane or crutches, and he was doing quite well." (Doc. 15-3 at 27).
14 Later, in July 2016, Dr. Zoellner again noted that Plaintiff walked into the office without
15 the use of an assistive device. (*Id.*) The ALJ's opinion also notes that "[t]reating records in
16 late 2018 note normal gait and station, with no cane use noted or recommended." (*Id.* at
17 28). Notably, Dr. Zoellner's opinion, upon which Plaintiff seeks to rely, also did not assess
18 Plaintiff's need for a cane or other assistive device. (*Id.* at 29). The ALJ further noted that
19 during both Dr. Krasner's and Dr. Hassman's examination, Plaintiff was able to walk
20 without a cane. (Doc. 15-3 at 28–29).

21    Plaintiff suggests that the ALJ failed to properly credit Dr. Krasner's opinion, but
22 the ALJ determined that Plaintiff's actual physical capabilities were *more limiting* than
23 those identified in Dr. Krasner's opinion. Moreover, it is unclear to the Court how the
24 ALJ's determination to exclude a cane from Plaintiff's RFC is inconsistent with Dr.
25 Hassman's opinion where Dr. Hassman does not opine on Plaintiff's need for a cane.

26    The ALJ's findings are supported by evidence in the record and the Court does not
27 find that the record evidence pointing in the opposite direction compels a conclusion
28 contrary to the ALJ's. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded*

*by regulation on other grounds* ("Even when the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

### c. Vocational Expert Testimony

Although not raised as a separate claim of error, Plaintiff next argues that the ALJ erred by posing improper hypotheticals to the vocational expert. (Doc. 19 at 17). Specifically, Plaintiff argues that because the ALJ improperly discounted Dr. Krasner's and Dr. Hassman's opinions regarding Plaintiff's medical necessity for cane use, the questions posed to the vocational expert did not adequately set forth all of Plaintiff's limitations. (*Id.*) Because the Court concludes that the ALJ did not err in reaching his determinations, the ALJ did not err in posing his hypothetical questions. *See Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").

### d. Plaintiff's Daily Activities

Finally, although not specifically raised as a separate claim of error, Plaintiff argues that the ALJ improperly discounted Dr. Zoellner's, Dr. Krasner's, and Dr. Hassman's medical opinions as inconsistent with Plaintiff's daily activities without the support of substantial evidence in the record. (Doc. 19 at 18–20). However, as noted by Defendant, the ALJ identified from the record and Plaintiff's testimony that Plaintiff "engag[es] in an active retirement lifestyle with his wife," including riding his motorcycle, walking his dog, and traveling throughout the United States. (Doc. 15-3 at 30). Based on Plaintiff's reported daily activity and the record as a whole, the ALJ concluded that "the objective medical evidence, as well as evidence of claimant's activity level, all as discussed above, establishes the claimant has a greater sustained capacity than the claimant alleges." (*Id.*) The Court fails to find legal error in the ALJ's decision because "[a] conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020).

Accordingly, the Court finds that the ALJ did not err in his RFC determination because the ALJ provided specific and legitimate reasons for rejecting the medical opinions of Dr. Zoellner, Dr. Krasner, and Dr. Hassman that are supported by substantial evidence in the record.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 2nd day of November, 2021.

James A. Teilborg
Senior United States District Judge